UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| THOMAS A. BOWDEN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:12-CV-1824 JAR |
| | ) | |
| STEVE MEINBERG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the following motions: Defendant Vernon Martin's Motion for Summary Judgment (Doc. No. 52); Plaintiff's Motion for Partial Summary Judgment against Defendant Vernon Martin on the Issue of Liability (Doc. No. 57); Defendants Meinberg, Hawkins, Hoffman and Wagner's Motion for Summary Judgment (Doc. No. 59); Plaintiff's Motion for Partial Summary Judgment Against Defendants Meinberg, Hawkins, Hoffman and Wagner on the Issue of Probable Cause (Doc. No. 64); Plaintiff's Motion to Exclude or, in the Alternative, to Limit the Trial Testimony of Diane Damos (Doc. No. 78); and Defendants' Motions to Exclude Testimony of Plaintiff's Expert Artemis Keitt Darby. (Doc. Nos. 80, 82) The motions are briefed and ready for disposition.[1]

**I.    Factual background[2]**

---

[1] Plaintiff did not file a reply to Defendants' memoranda in opposition to his motions for partial summary judgment or his motion to exclude the trial testimony of Diane Damos. Defendants did not file a reply to Plaintiff's memorandum in opposition to their motions to exclude the testimony of his expert Artemis Keitt Darby.

[2] The factual background is taken from Plaintiff's Statements of Uncontroverted Material Facts (PSOF-1, Doc. No. 58-1; PSOF-2, Doc. No. 65), Defendant Vernon Martin's Statement of Uncontroverted Material Facts (Martin SOF, Doc. No. 53) and Statement of Additional Material Facts (Martin ASOF, Doc. No. 72), and Defendants Steve Meinberg, Patrick Hawkins, Chris Hoffman and Wes Wagner's Statement of Uncontroverted Material Facts. (County Defendants SOF, Doc. No. 61)

Plaintiff Thomas A. Bowden brings this §1983 action against Deputy Sheriff Vernon Martin (Martin), Lieutenant Colonel Steve Meinberg (Meinberg), Lieutenant Patrick Hawkins (Hawkins), and Corporal Chris Hoffman (Hoffman) of the Jefferson County Sheriff's Office, and Wes Wagner (Wagner), Jefferson County Clerk, all in their individual and official capacities, as well as two Jefferson County residents, Benjamin Simmons and Aaron Gyurica.[3] Plaintiff alleges Defendants conspired to have him arrested for the crime of unlawful use of a weapon without probable cause in violation of his civil rights. (First Amended Complaint for Damages (FAC), Doc. No. 41) He further alleges state law claims of false arrest, malicious prosecution, fraudulent concealment and civil conspiracy.

This action arises out of an incident that occurred on January 29, 2009 in the area of Plaintiff's home located at 2120 Seneca Court in Jefferson County, Missouri. Defendants Ben Simmons and Aaron Gyurica were fishing from a bridge crossing Plattin Creek on Seneca Drive. Plaintiff saw the men fishing and shouted out at them to identify themselves. Simmons and Gyurica did not respond. Plaintiff fired a shotgun into the air from his back deck. According to Plaintiff, he fired his shotgun in the opposite direction of Simmons and Gyurica. (Martin SOF at ¶ 9) Following the gunshot, Plaintiff and Simmons engaged in a heated verbal altercation while Plaintiff was holding his shotgun. Thereafter, both Plaintiff and Simmons called 911 to report the incident. Martin responded to the calls.

Martin went first to the residence of Barbara Voyles, Simmons' grandmother. He spoke with Simmons and Gyruica, who told him they heard a shotgun blast and believed Plaintiff shot at them because they saw leaves fall in front of them following the blast. Simmons demanded

---

[3] A clerk's entry of default was entered against Simmons and Gyurica for their failure to file an answer or other responsive pleading within the time required by Fed.R.Civ.P. 4(d)(3). (Doc. Nos. 16, 17)

Plaintiff be arrested; Gyurica insisted something be done. Voyles said she guessed she could call Howard Wagner to "see what she could do about this." (Martin SOF at ¶ 8). Whether Howard Wagner was actually called is disputed. (See Voyles Depo., Doc. No. 53-7 at 29:16-30:1; Simmons Affidavit, Doc. No. 61-5 at ¶ 4(a); County Defendants SOF at ¶ 8).[4] Next, Martin spoke with Plaintiff at his residence. Plaintiff told Martin about the exchange with Simmons and that he had fired his shotgun in the opposite direction of the two men. He also told Martin about the verbal altercation he had with Simmons while he, Plaintiff, was holding his shotgun.

Martin then spoke by telephone with his supervisor, Defendant Hoffman. Upon hearing the facts from Martin, Hoffman ordered Martin to seize Plaintiff's shotgun and write a report and probable cause statement for unlawful use of a weapon. According to Martin, in that phone call Hoffman told him that "somebody from [the trailer that Simmons was at] had called Howard Wagner because they had worked for Howard Wagner." Martin further testified that "Howard Wagner, allegedly – and I don't know this to be true, but Howard Wagner allegedly called Lt. Colonel Meinberg ….who called Lt. Hawkins and Lt. Hawkins contacted [Cpl. Hoffman] to convey to me to do a report and seize the weapon and to draft a probable cause statement charging Mr. Bowden with unlawful use of a weapon." (PSOF-1 at ¶ 11e; PSOF-2 at ¶ 5e; Martin SOF at ¶ 14; County Defendants SOF at ¶¶ 4-5) The County Defendants deny having any communication with each other regarding the incident. (County Defendants SOF at ¶¶ 2, 3, 7)

Martin's probable cause statement alleges the following:

I, Deputy Vernon Martin #242, knowing that false statements on this form are punishable by law, *state that the facts contained herein are true*.

---

[4] Pursuant to a subpoena, Plaintiff obtained call detail records from AT&T showing three calls made to Jefferson County government telephone extensions during the time Martin was on the scene investigating the incident, including two to the main phone number for the Jefferson County Clerk's office at 9:39 a.m. and 10:18 a.m. ( Doc. No. 58-9)

> 1. *I have probable cause to believe* that on 7/29/2009, at 2120 Seneca Court, Festus, Missouri, in the County of Jefferson, Thomas Bowden … committed one or more criminal offense(s):
>
> <u>Unlawful Use of a Weapon</u>
>
> 2. The facts supporting this belief are as follows:
>
> <u>According to the victim's [sic], they reported that they parked their pickup truck on a low water bridge in the area of 2120 Seneca Court, to fish off the bridge when a local resident Thomas Bowden shoot [sic] at them with his shotgun.</u>

(Emphasis added). (Doc. No. 53-5 at 8) Martin later admitted that after fully investigating the matter, he did not believe a crime had been committed and that he would not have written and signed a probable cause statement but for his supervising officer ordering him to do so. (PSOF-1 at 11; PSOF-2 at 5)

Plaintiff was subsequently charged with unlawful use of a weapon, a Class D felony in violation of RSMo. § 571.030.1(4).[5] A preliminary hearing was held before Jefferson County Circuit Court Judge Nathan B. Stewart. Simmons and Martin both testified and were cross-examined by Plaintiff's counsel. Plaintiff disputes that his attorney was given the opportunity to present evidence at the preliminary hearing. (Martin SOF at ¶ 19 and Pltf. Resp.) Judge Stewart determined that probable cause existed to charge Plaintiff with unlawful use of a weapon and bound him over for trial. Martin testified at Plaintiff's criminal trial. Plaintiff was acquitted following a jury trial.

## II. <u>Summary Judgment motions</u>

### A. Legal standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See <u>Celotex Corp. v. Catrett</u>, 477

---

[5] § 571.030.1(4) provides that "[a] person commits the crime of unlawful use of weapons if he or she knowingly: exhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner…"

U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

### B. Discussion

Central to all of the summary judgment motions is the issue of probable cause for Plaintiff's arrest. "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." Green v. State of Missouri, 734 F.Supp.2d. 814, 832 (E.D.Mo.2010) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)). More specifically, "[p]robable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense at the time of the arrest." Hoffmeyer v. Porter, 2012 WL 5845094, at *3 (E.D.Mo. Nov. 19, 2012) (quoting Green v. Nocciero, 676 F.3d 748, 751 (8th Cir.2012)). In an action for false arrest, probable cause is generally a question of fact for the jury. Dowell v. Lincoln County, 927 F.Supp.2d 741, 756 (E.D.Mo. 2013) (citing State v. Morgenroth, 227 S.W.3d 517, 522 n. 6 (Mo.Ct.App.2007). Nonetheless, to defeat summary judgment there must be material facts in dispute, "with one

version establishing reasonable grounds and another refuting it." Id. (quoting Signorino v. Nat'l Super Mkts., Inc., 782 S.W.2d 100, 103 (Mo.Ct.App.1989)).

**Estoppel**

As a threshold matter, Defendants argue Plaintiff is estopped from litigating the issue of probable cause in light of the Jefferson County Circuit Court's finding of probable cause in the preliminary hearing. Defendants rely on Guenther v. Holmgren, 738 F.2d 879 (7th Cir. 1984) and Sanders v. Frisby, 736 F.2d 1230 (8th Cir. 1984), two cases holding that the doctrine of collateral estoppel barred plaintiffs' § 1983 claims for alleged violations of Fourth Amendment rights because those claims had already been litigated and decided adversely to them during state court proceedings. (Doc. No. 56 at 5-8) Plaintiff responds that a probable cause finding made in a "summary and cursory" criminal preliminary hearing does not estop him from later bringing a § 1983 claim challenging the integrity, rather than the sufficiency, of the evidence, citing Whitley v. Seibel, 676 F.2d 245 (7th Cir. 1982). Plaintiff argues he did not have an opportunity to fully discover evidence and litigate whether his arrest was perpetrated in bad faith and in furtherance of a conspiracy or to appeal the circuit court's finding of probable cause. (Doc. No. 75 at 6-10)

In Allen v. McCurry, 449 U.S. 90 (1980), the Supreme Court held that a federal court must "give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so." Id. at 96. In Haring v. Prosise, 462 U.S. 306 (1983), the Court indicated that federal courts should apply state collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state proceeding.

Missouri courts consider four factors in applying collateral estoppel: (1) the issues in the present case and the prior adjudication must be identical; (2) the judgment in the prior adjudication must be on the merits; (3) "the party against whom collateral estoppel [is] asserted

[must have been] the same party or in privity with a party in the prior adjudication;" and (4) "the party against whom collateral estoppel is asserted [must] have [had] a full and fair opportunity to litigate the issue in the prior suit." In re Scarborough, 171 F.3d 638, 641-42 (8th Cir. 1999) (quoting State v. Nunley, 923 S.W.2d 911, 922 (Mo.1996)).

Applying these principles, the court in Guenther concluded that Guenther's probable cause claim was precluded by the state court's determination of that claim in the state criminal preliminary hearing where he was able to thoroughly litigate and challenge issues of the arresting officer's veracity and good faith. Guenther, 738 F.2d at 884. Specifically, Guenther's counsel rigorously cross-examined the officer regarding his version of the events leading up to the arrest and called a witness to rebut the officer's version. The court heard considerable testimony from both sides before making its probable cause determination. The Guenther court held "[t]here can be little doubt that the issue of [the officer's] veracity and good faith – the linchpin of [plaintiff's] § 1983 Fourth Amendment claim – was both raised and actually litigated in the preliminary hearing." Id.

In Sanders, the court determined that Sanders had fully litigated his Fourth Amendment claims in the state trial court, but failed on appeal from his conviction to set forth any assignments of error with respect to the trial court's denial of those claims, thereby waiving them. Sanders, 736 F.2d at 1232. Under these circumstances, the court concluded that a Missouri court would give collateral estoppel effect to the trial court's ruling on the Fourth Amendment claims in a subsequent § 1983 action based on the same claims. Id.

These cases are distinguishable from Whitely, 676 F.2d 245. In that case, Whitely's § 1983 claim was based on the arresting officer's failure to investigate his alibi and his misrepresentations to prosecuting authorities that he had checked the alibi and found it to be

false. Unlike in Guenther, Whitely, presumably for tactical reasons, never raised or litigated the issue of the arresting officer's veracity during the preliminary hearing; nor did he raise or litigate the issue of his purported alibi witness. Id. at 249. The court concluded that the finding of probable cause at the preliminary hearing did not estop Whitely from bringing his § 1983 suit for false arrest because it attacked the integrity, rather than the sufficiency, of the evidence. In addition, the court found Whitely's decision not to raise his alibi defense at the preliminary hearing did not amount to a waiver of that defense. The court questioned whether collateral estoppel would ever be appropriate solely on the basis of a preliminary hearing, noting that a preliminary hearing is a "relatively summary proceeding, designed only to reach an interim decision in the process of bringing a defendant to trial. The suspect has no right to discover what is in the prosecutor's arsenal, or to appeal the finding of probable cause. In fact, the preliminary hearing can be dispensed with entirely and the case taken directly to a grand jury. Under these circumstances a suspect may not have had time to prepare his case when the preliminary hearing is held, or may have strategic reasons for waiting until trial to make his defense." Id. at 249-50.

In the instant case, Plaintiff disputes that he was able to present evidence and fully and fairly litigate the issue of the integrity of the evidence presented at the preliminary hearing. (See Martin SOF at ¶ 19 and Pltf. Resp.) The Court has reviewed the transcript of Plaintiff's preliminary hearing and in particular Martin's testimony. (Doc. No. 53-6 at 31:5-51:20) Plaintiff's counsel attempted to question Martin on his opinion as to whether or not a crime had been committed; however, the State's objection to the line of questioning was sustained. (Id. at 49:3-14) Thus, Judge Stewart did not consider the veracity of the state's case against Plaintiff. As in Whitley, Plaintiff's § 1983 suit attacks the integrity, rather than the sufficiency of the evidence of probable cause. Under these circumstances, the Court concludes that collateral

estoppel does not apply to bar Plaintiff's suit. "Nothing in Allen v. McCurry requires us to depart from the traditional precept that a party is not estopped to raise issues that he has had less than a "full and fair opportunity" to litigate in a prior proceeding." Whitley, 676 F.2d at 250 (citing 449 U.S. at 95 n. 7, 100-101).

**Probable cause**

In support of his motions for partial summary judgment, Plaintiff argues that Martin's admissions that he lacked probable cause to arrest Plaintiff and believed Plaintiff's rights were violated are dispositive of the issue of probable cause. Specifically, Martin testified on deposition that he did not believe the facts of the situation fit the elements of any crime, including any weapons crime (Martin Deposition, Doc. No. 65-2, 27:3-8, 32:8-19, 38:17-24, 66:22-67:14); that he would not have written and signed a probable cause statement but for Hoffman ordering him to do so (Id. at 40:21 -25, 41:1-2, 43:7-44:2); and that he believes Plaintiff's rights were violated because "there was no just cause for this report to even be wrote (sic)" and it was only written because it was ordered from the top down. (Id. at 17:18-24)

Defendants respond that because probable cause depends on an objective analysis of the facts, i.e., what a reasonable officer could have believed under the circumstances, see Royster v. Nichols, 698 F.3d 681, 688 (8th Cir. 2012), Martin's subjective opinion on the existence of probable cause is neither relevant nor determinative. Defendants argue that the facts known to Martin at the time he wrote his probable cause statement were sufficient under the objective reasonableness standard. When Martin investigated the scene, Simmons told him he believed Plaintiff shot at him because he heard a gunshot, after which leaves fell from a tree in his immediate vicinity. (Martin ASOF at ¶ 3) In addition, Plaintiff admitted firing his shotgun, albeit in the opposite direction (id. at ¶ 4), and that he and Simmons had engaged in a heated discussion

9

after the shot was fired, during which time Plaintiff held his shotgun. (Id. at ¶¶ 1-5) Defendants maintain that Martin did not falsify any of the facts reported to him – his summary of the victims' statement is accurate – and that the only information omitted from his probable cause statement is his subjective belief that there was no probable cause to arrest Plaintiff, which omission is immaterial.

In reply, Plaintiff asserts that Martin's subjective beliefs are indeed relevant because the Fourth Amendment requires an affiant to be truthful and act in good faith. "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing. This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct . . . But surely it is to be "truthful" in the sense that the *information put forth is believed or appropriately accepted by the affiant as true*." Franks v. Delaware, 438 U.S. 154, 164-65 (1978). (Emphasis added.)

It is clearly established that the Fourth Amendment prohibits a police officer from manufacturing probable cause by knowingly including false statements in a warrant affidavit. See Franks, 438 U.S. 154. Here, it is undisputed that at the time he completed his report, Martin did not in fact believe there was probable cause to arrest Plaintiff. And yet, in his probable cause statement, Martin stated he had probable cause to believe Plaintiff committed a crime:

> I, Deputy Vernon Martin #242, knowing that false statements on this form are punishable by law, state that the facts contained herein are true.
>
> 1. I have probable cause to believe that [Plaintiff committed the offense of unlawful use of weapon].

An officer must have a reasonable belief that an offense is occurring. If Martin had no reasonable basis for believing that Plaintiff had committed a crime it, then it was not objectively reasonable for him to use the information to obtain an arrest warrant. Burk v. Beene, 948 F.2d 489, 492 (8th
10

Cir. 1991). Under the facts and circumstances of this case, the Court finds a genuine issue of material fact regarding the existence of probable cause for the arrest and will therefore deny the motions for summary judgment on this basis.

**State law claims**

Plaintiff asserts claims against Defendants for civil conspiracy, fraudulent concealment, false arrest and malicious prosecution, all of which rely on a showing that there was no probable cause for Plaintiff's arrest. As discussed above, the Court cannot make a probable cause determination based on the record before it. Thus, it cannot enter judgment as a matter of law on Defendants' motions on the merits of Plaintiff's state law claims.

**Qualified immunity**

Defendant Martin has also raised the issue of qualified immunity. To determine whether an official is entitled to qualified immunity, the Court conducts a two-part analysis. First, the Court must determine whether, "taking the facts in the light most favorable to the injured party, the facts alleged demonstrate that the official's conduct violated a constitutional right." White v. McKinley, 519 F.3d 806, 813 (8th Cir.2008) (citing Clemmons v. Armontrout, 477 F.3d 962, 965 (8th Cir.2007)). If a violation is found, the Court must then analyze whether the right was clearly established. Id. "To determine whether a right is clearly established we ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

Here, the right in question is the Fourth Amendment right not to be arrested without probable cause, a right which is clearly established. See Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996). As a result, the qualified immunity inquiry is identical to the probable cause question. See Alberternst v. Hunt, 2011 WL 6140888, at *4 (E.D.Mo. Dec. 9, 2011). Because the

Court has found there is a genuine issue of material fact as to whether probable cause existed, Martin is not entitled to summary judgment based on qualified immunity. White, 519 F.3d at 813 ("The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences. If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment."). See also Berry v. Davis, No. 13-3610 (8th Cir. August 18, 2014) (citing Nance v. Sammis, 586 F.3d 604, 609 (8th Cir. 2009) (denial of qualified immunity will be affirmed if genuine issue of material fact exists as to whether reasonable officer could have believed his actions were lawful).

## II. Daubert motions

Plaintiff is a corporate airplane pilot. He claims he has suffered lost past earnings and will sustain lost future earnings as a result of the felony gun charge that now appears on a criminal background check. (FAC at ¶ 37g.) Both sides have endorsed expert witnesses to give their opinions concerning the effect of the felony gun charge on Plaintiff's ability to earn a living as a professional pilot.

### A. Legal Standard

The federal rules of evidence and related case law require that an expert be qualified and that the expert's testimony be both reliable and relevant. See Federal Rule of Evidence 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). The burden of establishing this predicate for an expert's testimony falls on the party producing the expert; the trial court determines whether that party has met its burden. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 592, 597 (1993).

An expert may be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. Testimony that is not scientific in nature is better judged by examining whether the expert has sufficient personal knowledge, work experience, or training to support the opinions offered. See Fed.R.Evid. 702; Kumho Tire Co., 526 U.S. at 150-51. In general, the court's responsibility "is to make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., 526 U.S. at 152.

Reliability hinges on the sufficiency of the facts or data on which the opinion is based, the dependability of the principles and methods employed, and the proper application of the principles and methods to the facts of the case. Fed.R.Evid. 702. If the opinion is based solely or primarily on experience, the witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts. Fed.R.Evid. 702, Advisory Committee Notes. To be relevant, the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702; Daubert, 509 U.S. at 591.

"Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir.1999), aff'd, 528 U.S. 440 (2000). The Rule "favors admissibility if the testimony will assist the trier of fact." Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir.1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Id. (citation and internal quotation omitted).

**B. Discussion**

**Plaintiff's motion to exclude Diane Damos's testimony**

Defendants retained Diane L. Damos, Ph.D., to address the statements of fact and opinions offered by Plaintiff's expert Artemis Keitt (Kit) Darby, opine on the extent to which the criminal charges against Plaintiff impact his employability in the aviation industry, and address Plaintiff's claims in light of his documented attempts to obtain employment. (Damos Report, Doc. No. 79-1 at 2) Dr. Damos is an aviation psychologist who consults with the airline industry on pilot selection and aviation human factors. (CV of Diane L. Damos, Doc. No. 79-1 at 27-51) Based on her research, review of the materials provided and her personal experience in the aviation industry, Dr. Damos opined that the criminal matter would have "no significant impact on [Plaintiff's] employability in the aviation industry after his acquittal." (Damos Report at 3-4) First she states that the assertion by Plaintiff's expert, Mr. Kit Darby, that Plaintiff had a 100% probability of employment as a vice president of flight operations by a foreign corporation from the time of the incident until age 65 has no basis in fact, is speculative, and cannot be held to a reasonable degree of certainty. (Id. at 3) Second, Dr. Damos asserts that contrary to Mr. Darby's Career Earnings and Benefits Model Report, no one can say to a reasonable degree of certainty that Plaintiff will be unable to obtain a position as a non-flying flight department manager because of his arrest record. (Id.) Finally, Dr. Damos states that during the period from July 2009 to June 2010, Plaintiff was not conclusively prevented from working as a professional pilot overseas. (Id. at 4)

In support of his motion, Plaintiff argues it is impossible for Dr. Damos to give a reliable and qualified opinion on the question at issue here for two reasons. First, she lacks actual real world experience in hiring pilots. (Doc. No. 79 at 4) Dr. Damos admits she only teaches how to quantify the selection of pilots and has never actually been employed by a private or commercial airline to perform the pilot screening and selection. (Damos Deposition, Doc. No. 79-2 at 55:22-

56:5; 73:23-75:1). Second, Dr. Damos lacks knowledge and experience in criminal history background checks. (Doc. No. 79 at 5) Although she acknowledges that criminal background checks are performed on pilots during the hiring process and that an applicant's criminal history will be a factor in the hiring process (see Damos Depo., 78:1-7), she does not know whether a felony criminal charge absent a conviction will appear on a criminal history background check. (Id. at 7:14-23; 58:13-16; 60:13-20).

The Court is satisfied that Dr. Damos is qualified to testify regarding Plaintiff's employability in the airline industry based on her thirty-plus years of general aviation industry experience as well as her professional experience in teaching and consulting on the screening and selection of pilots. The fact that she has not actually worked for an airline does not persuade the Court otherwise. The extent of an expert's experience or training goes to the weight of the witness's testimony, not its admissibility. Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100-01 (8th Cir.2006) (internal quotation marks and citation omitted). Dr. Damos's relative experience in the matter at issue may be explored by Plaintiff on cross-examination. See Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 544 (8th Cir. 2006). For these reasons, Plaintiff's motion to exclude Dr. Damos's testimony will be denied.

**Defendants' Motions to Exclude Artemis Keitt Darby's testimony**

Kit Darby was retained to develop an employability and career earnings model for Plaintiff. (Darby Expert Report, Doc. No. 81-2 at 2) Mr. Darby is a pilot, a former publisher of aviation industry job availability and salary information, and an aviation industry career consultant. He is president of KitDarby.comAviation Consulting, LLC. (Darby Report, at 2) Mr. Darby opined that the most probable income loss for Plaintiff is $2,101,739, which reflects the expected salary, benefits, and retirement income loss after Plaintiff's arrest on July 29, 2009. (Id.

at 15) He further opines that the criminal charge puts Plaintiff at a competitive disadvantage in the interview process. (Id. at 6; Darby Deposition, Doc. No. 81-1 at 67:1-68:24)

Defendants argue Mr. Darby's ultimate opinion on employability is not reliable because it requires speculation, is not based on experience, ignores objective data, and provides unfounded extrapolation from the facts of record. (Doc. No. 80 at 10-12) Defendants further argue that Mr. Darby's opinions regarding impact on employability, based "somewhat" on common sense and borne out by "the logic of the common man" (see Darby Deposition, Doc. No. 81-1 at 195:23-25; 196:1-8), are not helpful to a jury. (Doc. No. 80 at 3) Lastly, Defendants argue Mr. Darby is unqualified to render opinions regarding employability in this case. (Doc. No. 80 at 12-13)

The Court is satisfied that Mr. Darby is qualified to testify regarding Plaintiff's employability in the airline industry based on his thirty plus years of experience analyzing the pilot job market, data compilation, interviews with airline applicants and recruiting personnel. (Darby Professional Publications and Biography, Doc. No. 81-2 at 19-39) Because the airline industry is highly specialized and regulated, the Court finds Mr. Darby's testimony regarding the requirements and qualifications for employment as a pilot will be helpful to a jury.

Defendants take issue with Mr. Darby's underlying data, particularly with regard to foreign market salaries and benefits. Generally, questions as to the sources and bases of an expert's opinion affect the weight, rather than the admissibility of the opinion. "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 544 (8th Cir. 2006) (quotation omitted). For these reasons, Defendants' motions to exclude Mr. Darby's opinions and testimony will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Vernon Martin's Motion for Summary Judgment [52] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment against Defendant Vernon Martin on the Issue of Liability [57] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Meinberg, Hawkins, Hoffman and Wagner's Motion for Summary Judgment [59] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment Against Defendants Meinberg, Hawkins, Hoffman and Wagner on the Issue of Probable Cause [64] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude or, in the Alternative, to Limit the Trial Testimony of Diane Damos [78] is **DENIED**.

**IT IS FINALLY ORDERED** that Defendants' Motions to Exclude Testimony of Plaintiff's Expert Artemis Keitt Darby [80, 82] are D**ENIED**.

Dated this 28th day of August, 2014.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE